## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| CCI LIQUIDATION, INC., | Case No. 18-10679 (CSS) |
| Debtor.[1] | **Hearing Date: October 4, 2018, 11:00 a.m. EDT** |

## MEMORANDUM OF LAW IN SUPPORT OF
## CONFIRMATION OF PLAN OF LIQUIDATION

CCI Liquidation, Inc., the debtor-in-possession in this Chapter 11 case (the "**Debtor**"), respectfully submits this memorandum of law in support of confirmation of the *Debtor's Combined Plan of Liquidation and Disclosure Statement (Corrected),* dated June 26, 2018 [D.I. 148] (the "**Plan**")[2] under § 1129 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"). At the hearing to consider confirmation of the Plan, the Debtor will request entry of an order confirming the Plan substantially in the form filed contemporaneously with this brief.

## BACKGROUND

**Jurisdiction and Venue**

1.      On March 23, 2018 (the "**Petition Date**"), CGM Partners, LLC, Howard Elias, and Kelly Yang Living Trust (the "**Petitioning Creditors**") filed an involuntary petition in this Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") against the Debtor. The Debtor filed its *Certificate of Counsel Regarding Proposed Order for Relief in Involuntary Case* on March 23, 2018. The Court entered the Chapter 11 order for relief on March 27, 2018 (the "**Relief Date**"). The Debtor continues to manage its remaining assets as a debtor-in-possession under Bankruptcy Code §§ 1107 and 1108.

---

[1] The last four digits of the Debtor's federal tax identification number are 4409. The Debtor, formerly known as Candi Controls, Inc., formerly maintained its principal place of business at 428 13th Street, Third Floor, Oakland, CA 94612.

[2] All capitalized terms used but not defined in this declaration are defined in the Plan.

2.     This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). Under Local Rule 9013-1(f), the Debtor consents to the Court's entry of a final order on this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with this Motion consistent with Article III of the United States constitution. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

**Background Concerning the Debtor**

3.     Information concerning the Debtor's former business operations and the events leading up to this Chapter 11 case is contained in the *Declaration of Douglas Klein in Support of First Day Motions* filed on March 28, 2018 [D.I. 15], and in the disclosure portions of the Plan.

**Approval of Disclosure Statement and Solicitation of Votes on Plan**

4.     This Court entered its *Order Approving: (A) Disclosure Statement on an Interim Basis; (B) Solicitation and Voting Procedures; and (C) Scheduling Plan Confirmation Hearing* [D.I. 147] (the "**Solicitation Order**") on July 26, 2018. In strict accordance with the procedures approved and required in the Solicitation Order for (i) notifying creditors and parties-in-interest of the confirmation hearing and the deadline by which to object to confirmation and (ii) soliciting, receiving, and tabulating votes to accept or reject the Plan, the Debtor, through its counsel, served on July 30, 2018, a copy of the Solicitation Order, the Plan, and the Combined Hearing Notice [D.I. 149] (the form of which the Court approved in the Solicitation Order), on all creditors and other parties-in-interest as required under applicable Bankruptcy Rules and the Solicitation Order. *See Certificate of Service* [D.I. 155]. Also on July 30, 2018, Debtor's counsel served a copy of the Ballot (the form of which the Court approved in the Solicitation Order) and a pre-addressed envelope to all holders of Claims in Class 2 under the Plan for use in voting to accept or reject the Plan. *See Certificate of Service* [D.I. 155].

**No Objections to Confirmation**

5.      The Solicitation Order set a deadline for the filing and service of any objections to confirmation of the Plan for 5:00 p.m. Eastern time on September 24, 2018. As of that time and date and as of the filing of this brief, there have been no objections filed with the Court or served on counsel for the Debtor and the Debtor is unaware of any party's objection to confirmation of the Plan.

## CONFIRMATION OF PLAN

6.      To confirm the Plan, the Court must find that both the Plan and the Debtor comply with each requirement of Bankruptcy Code § 1129.[3] As set forth below and in the *Declaration of Douglas Klein in Support of Confirmation of Plan of Liquidation* filed contemporaneously with this brief (the "**Klein Declaration**"), the Plan and the Debtor satisfy all requirements of Bankruptcy Code § 1129 and, therefore, the Plan should be confirmed.

**The Plan Complies with Bankruptcy Code § 1129(a)(1)**

7.      Legislative history pertaining to Bankruptcy Code § 1129(a)(1) indicates that this provision contemplates that a plan must comply with the classification and content requirements of Bankruptcy Code §§ 1122 and 1123.[4] The Plan complies with all these requirements and, therefore, complies with Bankruptcy Code § 1129(a)(1).

8.      Bankruptcy Code § 1122(a) permits a plan to "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Here, the Plan comprises two classes of claims and one class of interests. Class 1 contains all Priority Claims other than the types of claims specifically not subject to classification under Bankruptcy Code § 1123(a)(1); these Priority Claims are not substantially similar to any other

---

[3] *See, e.g., In re Tribune Co.,* 464 B.R. 126 (Bankr. D. Del. 2011); *In re Exide Techs.,* 303 B.R. 48 (Bankr. D. Del. 2003).

[4] *See* S. Rep. No. 95-989 at 126 (1978),  *as reprinted in* 1978 USCCAN 5787, 5912; H.R. Rep No. 95-595 at 412 (1977), *as reprinted in* 1978 USCCAN 5963, 6368; *see also In re Johns-Manville Corp.,* 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986) (analysis of a plan's compliance with § 1129(a)(1) involve an assessment of whether the plan conforms with §§ 1122(a) and 1123), *aff'd* 843 F.2d 636 (2d Cir. 1988).

claims of any other party in any other class under the Plan. Class 2 is the only class containing general unsecured claims; as such, there are no general unsecured claims residing in any other class. Class 3 is the only class containing equity interests in the Debtor; as such, there are no interests residing in any other class. The Plan's classification scheme recognizes the legal and factual differences among various claims and interests and strictly follows the dictates of Bankruptcy Code § 1122(a).

9.    Bankruptcy Code § 1123(a) identifies seven content-related requirements for a Chapter 11 plan. Here, the Plan complies with every aspect of each of these seven requirements:

a.    Bankruptcy Code § 1123(a)(1) requires that a plan designate classes of claims and interests other than, among others, administrative expense claims and priority tax claims. Here the Plan's classification scheme, as described above, complies with this requirement by classifying all Claims and Equity Interests in appropriately separate classes and providing for the unclassified treatment of Administrative Claims and Priority Tax Claims.

b.    Bankruptcy Code § 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." The Plan complies with this requirement by clearly identifying that Class 1 is not impaired under the Plan. The Plan's disclosure provisions describes not only the treatment for that Class but also what the concept of "impairment" means under the Bankruptcy Code.

c.    Bankruptcy Code § 1123(a)(3) requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." The Plan complies with this requirement by clearly identifying that Classes 2 and 3 are impaired under the Plan. The Plan describes in ample detail the treatment accorded to claims or interests in each of those Classes.

d.    Bankruptcy Code § 1123(a)(4) requires that a plan "provide the same treatment for each claim or interest of a particular class." The Plan complies with this requirement; the treatment provided for each Class is substantially identical for all claims or interests within each such Class. The only technical difference to note is that an amendment to the Plan filed on September 26,

2018, would affect the timing but not the amount of the Distribution to CFA on account of its allowed Class 2 claim.

e.  Bankruptcy Code § 1123(a)(5) requires that a plan provide "adequate means" for its implementation. "Adequate means" may include retention by the debtor of all or part of its property, the transfer of property of the estate to one or more entities, cancelation or modification of any indenture, curing or waiving of any default, extension of a maturity date, or change in any interest rate or other term of outstanding securities, amendment of the debtor's charter, or the issuance of securities in exchange for cash, property, or existing securities, all in exchange for claims or interests or for any other appropriate purpose.[5] Here, the Plan provides for the complete liquidation and distribution of the Debtor's remaining assets—essentially all cash—in final satisfaction of all Claims against the Debtor's estate. Douglas Klein's appointment as Plan Administrator and the duties and powers of the Plan Administrator enumerated in the Plan will more than adequately ensure that the Plan is implemented consistent with its terms and intent.

f.  Bankruptcy Code § 1123(a)(6) requires that a debtor's corporate governance documents prohibit the issuance of non-voting equity securities. The Debtor's corporate governance documents are no longer relevant or applicable to the post-confirmation liquidation of the Debtor's assets because the Debtor is not re-vested with any assets of the Estate.

g.  Bankruptcy Code § 1123(a)(7) requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan." This provision is supplemented by Bankruptcy Code § 1129(a)(5), which directs the Court's scrutiny to the methods by which the directors and management of a reorganized debtor are to be chosen to provide adequate representation of the creditors whose investments are involved in the reorganization.[6] The Plan identifies that Douglas Klein will act as the Plan Administrator from and after confirmation of the Plan and the Effective Date and that he was previously the Debtor's acting

---

[5] *See generally In re Spiegel, Inc.,* 2005 WL 1278094 at *5 (Bankr. S.D.N.Y. May 25, 2005).
[6] *See* 7 *Collier on Bankruptcy* ¶ 1123.01[7] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2010).

chief financial officer and, therefore, an insider. The Debtor believes that Mr. Klein's continued involvement in implementing the Plan and making Distributions after the Effective Date, considering his extensive experience with the Debtor's business and his background and experience in financial management, serves the best interests of the Debtor's creditors and comports with public policy. No other insider or other individual will be employed or retained by the Debtor after the Effective Date. Accordingly, Mr. Klein's appointment as Plan Administrator is consistent with the interests of the Debtor's creditors and with public policy. The Plan satisfies the requirements of Bankruptcy Code § 1123(a)(7).

10.    Bankruptcy Code § 1123(b) identifies various provisions that may, but need not, be included in a plan. The Plan contains several of these discretionary provisions, including the rejection of the Debtor's executory contracts and the vesting of certain causes of action in the Plan Administrator. The Plan also includes customary exculpation and injunction provisions entirely consistent with the Bankruptcy Code and this Court's local practice, as already evaluated and approved by the Office of the United States Trustee. The Plan does not contain release provisions.

a.    The Plan's exculpation provisions do not affect the liability of non-Debtor third parties but rather set a standard of care of gross negligence, fraud, or willful misconduct against one of the narrowly-defined group of parties covered by those provisions and then only for acts arising out of the Debtor's Chapter 11 case.[7] The Plan's exculpation provisions substantially match verbatim exculpation provisions approved in confirmed plans in this district innumerable times. Each party covered by the Plan's exculpation provisions played a central role in negotiating and developing the Plan, without whose involvement the liquidation enabled by the Plan would not have been possible. Accordingly, the Plan's exculpation provisions are justified and appropriate.

b.    The Plan's injunction provisions track Bankruptcy Code § 1141 in all material respects and are designed to protect the Debtor's property—not the Debtor or any non-Debtor third parties.

---

[7] *See In re PWS Holding Corp.,* 228 F.3d 224, 245 (3d Cir. 2000) (an exculpation provision is "a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code").

These injunction provisions are substantively identical to injunction provisions approved in confirmed plans in this district innumerable times.

c. Article 7 of the Plan provides for the rejection of all executory contracts (the "**Contracts**") to which the Debtor is a party not already assumed and assigned in connection with the Sale. For all Contracts, the Debtor has determined in the exercise of its business judgment that the Contracts constitute a burden on the Debtor's estate because they are unnecessary to the Debtor's business, which has ceased in all respects.

## The Plan Complies with Bankruptcy Code § 1129(a)(2)

11.    The principal purpose of Bankruptcy Code § 1129(a)(2) is to ensure that a plan's proponents have complied with the requirements of Bankruptcy Code §§ 1125 and 1126.[8] As set forth in the Klein Declaration, the Debtor as the Plan's proponent has complied with all applicable provisions of the Bankruptcy Code and conducted itself in accordance with the Bankruptcy Code's requirements, including: (a) soliciting votes on the Plan in a manner wholly consistent with Bankruptcy Code § 1126 and as required by the Solicitation Order; (b) complying with all aspects of all other Court orders; and (c) managing the Debtor's financial affairs within the confines established by the Bankruptcy Code and Court orders. Accordingly, the Plan complies with Bankruptcy Code § 1129(a)(2).

## The Debtor Proposed the Plan in Good Faith under Bankruptcy Code § 1129(a)(3)

12.    Bankruptcy Code § 1129(a)(3) requires a plan to be "proposed in good faith and not by any means forbidden by law." "[F]or purposes of determining good faith under section 1129(a)(3) … the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objections and purposes of the Bankruptcy Code."[9] Courts hold

---

[8] *See, e.g., In re PWS Holding Corp.,* 228 F.3d at 248, n.23 (*quoting In re Trans World Airlines, Inc.,* 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995) ("The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the plan").

[9] *PWS Holding,* 228 F.3d at 242 (citation omitted); *see also In re SGL Carbon Corp.,* 200 F.3d 154, 165 (3d Cir. 1999) (good faith standard of § 1129(a)(3) requires that there be "some relation" between the plan and the "reorganization-related purposes that [Chapter 11] was designed to serve"); *In re Coram Healthcare*

that "a plan is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed'" in the Bankruptcy Code.[10]

13.     The Plan, which provides for the liquidation of the Debtor's remaining assets—essentially all cash—for the benefit of its creditors, has been proposed in good faith and not by any means forbidden by law. The Debtor has made every effort to treat all similarly-situated creditors equally and fundamentally fairly, and believes that the Plan succeeds in doing so. Neither the Debtor nor the Plan places the burden of the Debtor's liquidation disproportionately on one Class of creditors or another, except to the extent that priorities among Classes of creditors dictated by the Bankruptcy Code required certain disproportionate treatment among creditors. Under all circumstances, although the Plan does not provide for payment in full of all Claims, the Plan does fairly achieve the Debtor's liquidation for the maximum possible benefits of all creditors, a result consistent with the objections and purposes of Chapter 11.

**The Plan Complies with Bankruptcy Code § 1129(a)(4)**

14.     All payments made or to be made under the Plan for services or for costs and expenses in, or in connection with, this case or the Plan have either been approved by this Court or are subject to this Court's approval as reasonable. Accordingly, the Plan complies with the requirements of Bankruptcy Code § 1129(a)(4).

**The Plan Makes Adequate Disclosures under Bankruptcy Code § 1129(a)(5)**

15.     Bankruptcy Code § 1129(a)(5) requires the Plan to identify all individuals that will serve as management of a reorganized debtor or the debtor's successor, the identity of any insider to be employed or retained by the debtor or its successor, and the compensation to be proposed to be paid to such insider. Additionally, the continuation of existing management must be consistent with the interest of creditors, equity security holders, and public policy.

---

*Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) ("The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with objections and purposes of the Bankruptcy Code").

[10] *In re PPI Enter. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) (quoting *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984)), *aff'd* 324 F.3d 197 (3d Cir. 2003).

16.     In determining whether post-confirmation management is consistent with the interests of creditors and public policy, a court must consider the proposed management personnel's competence, discretion, experience, and affiliation with entities having interests adverse to the debtor.[11] A plan may provide for the retention of a debtor's existing management for the post-confirmation period.[12]

17.     The Plan fully satisfies the requirements of Bankruptcy Code § 1129(a)(5). The Plan identifies that Douglas Klein will act as the Plan Administrator from and after confirmation of the Plan and the Effective Date and that he was previously the Debtor's acting chief financial officer and, therefore, an insider. The Debtor believes that Mr. Klein's continued involvement in implementing the Plan and making Distributions after the Effective Date, considering his extensive experience with the Debtor's business and his background and experience in financial management, serves the best interests of the Debtor's creditors and comports with public policy. No other insider will be employed or retained by the Debtor or the Plan Administrator after the Effective Date. The Plan clearly defines the terms of Mr. Klein's compensation for serving as Plan Administrator.

**Bankruptcy Code § 1129(a)(6) Does Not Apply to the Plan**

18.     Bankruptcy Code § 1129(a)(6) requires governmental and regulatory approval of any rate change implemented under the terms of a plan. The Debtor submits that this provision does not apply to the Debtor or the Plan because all the Debtor's business operations have ceased and, in any event, were never subject to governmental or regulatory approval of rates.

**The Plan Satisfies the "Best Interests of Creditors Test" under Bankruptcy Code § 1129(a)(7)**

19.     The test implement under Bankruptcy Code § 1129(a)(7)—frequently referred to as the "best interests of creditors test"—applies only to impaired classes of claims that have not accepted

---

[11] *See In re Sherwood Square Assocs.,* 107 B.R. 872, 878 (Bankr. D. Md. 1989) (noting that the debtor "should have first choice of its management, unless compelling cause to the contrary exists.")

[12] *See, e.g., In re Texaco Inc.,* 84 B.R. 893, 908 (Bankr. S.D.N.Y. 1988) (holding § 1129(a)(5) satisfied where plan disclosed debtor's existing directors and officers continuing to serve post-confirmation).

the Plan. In accordance with the *Declaration of Jordan Kroop Reporting on Solicitation and Tabulation of Ballots* filed with the Court contemporaneously with this brief (the "**Ballot Report**"), both Classes of Claims, one unimpaired and the other impaired, have accepted the Plan. Even were that not so, with respect to each Class of Claims or Equity Interests under the Plan, each holder of a Claim or Equity Interest in such Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. This is established by, among other components of the record of this Chapter 11 case, the liquidation analysis included as an exhibit to the Plan, which clearly demonstrates that recoveries for all impaired creditors under the Plan will be significantly greater than those same creditors would receive under a hypothetical liquidation of the Estate under Chapter 7. Specifically, the liquidation analysis concludes that general unsecured creditors in Class 2 would a substantially lower distribution under a Chapter 7 liquidation than they will under the Plan. Accordingly, the Plan easily satisfies the "best interests of creditors" test embodied in Bankruptcy Code § 1129(a)(7).

**The Required Classes Have Accepted the Plan under Bankruptcy Code § 1129(a)(8)**

20.     Bankruptcy Code § 1129(a)(8) requires that each class of claims or interests under a plan either accept the plan or remain unimpaired under the plan. Under the Plan, only Class 2 is impaired and entitled to vote to accept or reject the Plan. As described in the Ballot Report, Class 2 has unanimously voted to accept the Plan. Class 1 (Priority Claims) is unimpaired and deemed to have accepted the Plan without voting. Class 3 (Equity Interests and Equity-Related Claims) is deemed to have rejected the Plan without voting and is, therefore, the only Class rejecting the Plan. As described below, the requirement for "cramdown" of Class 3 is easily met in accordance with Bankruptcy Code § 1129(b). Accordingly, the Plan satisfies the requirement of Bankruptcy Code § 1129(a)(8) with respect to all impaired Classes of Claims.

**The Plan Satisfies Bankruptcy Code § 1129(a)(9)**

21.     In accordance with Bankruptcy Code § 1129(a)(9)(A), the Plan provides that each holder of an Allowed Administrative Claim will be paid in full in Cash (or otherwise satisfied in accordance with its terms) on or after the Effective Date, as agreed by each such holder. Allowed Professional Fee Claims will be paid in full in Cash when they are Allowed. In accordance with Bankruptcy Code § 1129(a)(9)(B), the Plan provides that each holder of an Allowed Priority Claim will be paid in full in Cash on the later of the Effective Date and 30 days after such Claim becomes Allowed, unless such holder agrees to a different treatment. In accordance with Bankruptcy Code § 1129(a)(9)(C), the Plan provides that each holder of an Allowed Priority Tax Claim will be paid in full in Cash on the later of the Effective Date and 30 days after such Claims becomes Allowed, which is wholly consistent with the terms of Bankruptcy Code § 1129(a)(9)(C). Any holder of a Secured Tax Claim will receive under the Plan on account of that Claim cash payments in the same manner and over the same period as all other Allowed Priority Tax Claims, which is wholly consistent with the terms of Bankruptcy Code § 1129(a)(9)(D). (The Debtor is unaware of any Secured Tax Claims.) Accordingly, the Plan satisfies all requirements of Bankruptcy Code § 1129(a)(9).

**The Plan Satisfies Bankruptcy Code § 1129(a)(10)**

22.     Bankruptcy Code § 1129(a)(10) requires at least one class of impaired claims under a plan to have voted to accept the plan, determined without including any acceptance of the plan by an insider. As stated above and as reflected in the Ballot Report, the sole impaired Class of Claims under the Plan—that is, Class 2—has voted to accept the Plan. Accordingly, at least one impaired Class of Claims has voted to accept the Plan, determined without including any acceptance by any insider.

**The Plan is Feasible under Bankruptcy Code § 1129(a)(11)**

23.     Under Bankruptcy Code § 1129(a)(11), a plan may be confirmed only if "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation

or reorganization is proposed in the plan." This paragraph—frequently referred to as the "feasibility" test—is easily met in a plan of liquidation when the terms of the liquidation are made clear in the plan. As set forth in the Klein Declaration, the Plan calls for and establishes the terms and procedures for the complete liquidation of the Debtor, thus satisfying the requirement of Bankruptcy Code § 1129(a)(11).

**The Plan Satisfies Bankruptcy Code § 1129(a)(12)**

24.      As set forth in the Klein Declaration, the Debtor is current with respect to all fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6). If any such fees have not been paid, the Plan provides for the payment of all such fees on the Effective Date or as they come due after that time. Accordingly, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(12).

**Bankruptcy Code § 1129(a)(13)-(16) Do Not Apply to the Debtor**

25.      The Debtor has never been a party to a collective bargaining agreement, is not required to pay domestic support obligations, and is not an "individual," and there are no "provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust" that apply to the Debtor since the Debtor is a commercial entity. Accordingly, Bankruptcy Code § 1129(a)(13) through (16) do not apply to the Debtor or the Plan.

**The Plan Satisfies the "Cramdown" Requirements of Bankruptcy Code § 1129(b)**

26.      As noted above, Class 3 (comprising Equity Interests and Equity Related Claims that are mandatorily subordinated under Bankruptcy Code § 510(b)) is deemed to reject the Plan under Bankruptcy Code § 1126(g) because the holders of interests in that Class do not receive or retain any property on account of their interests. As a result and as demonstrated by the Ballot Report, the Plan meets all requirements of Bankruptcy Code § 1129(a) for confirmation other than Bankruptcy Code § 1129(a)(8) because of Class 3's deemed rejection. The Debtor requests that the Court confirm the Plan under Bankruptcy Code § 1129(b)(1) because the Plan does not discriminate unfairly and is fair and equitable to Class 3.

a.   The Plan does not discriminate unfairly against Class 3. Although the Bankruptcy Code does not define or otherwise elaborate on the meaning of "unfair discrimination," bankruptcy courts rely on an analysis of the facts pertaining to a particular case to assess whether a particular class of rejecting claims or interests are being unfairly discriminated against.[13] But, fundamentally, the Bankruptcy Code's prohibition on unfair discrimination militates against a plan providing for materially different treatment of one group of stakeholders from another similarly-situated group.[14] Here, Class 3 is the only class containing Equity Interests and Equity Related Claims; there is no other group of interests or claims subordinated under § 510(b) to receive the same or different treatment under the Plan. Accordingly, there is no discrimination at all with respect to Class 3, much less unfair discrimination.

b.   Under Bankruptcy Code § 1129(b)(2)(C)(ii), the Plan is fair and equitable with respect to Class 3 (a class of interests) because there exist no holders of any interest junior to those interests included in Class 3 and, therefore, no holder of an interest junior to those interests in Class 3 receive or retain any property under the plan on account of such junior interest.

**Remaining Provisions of § 1129**

27.    Bankruptcy Code § 1129(c) does not apply to the Plan or this case because there is only one plan on file.

28.    Regarding Bankruptcy Code § 1129(d), the principal purpose of the Plan is to effect the liquidation of the Debtor's assets, not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act.

---

[13] *See, e.g., In re Freymiller Trucking, Inc.,* 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (determining "unfair discrimination" requires a consideration of "all aspects of the case and the totality of all the circumstances").

[14] *See, e.g., In re Ambanc La Mesa Ltd. P'ship,* 115 F.3d 650, 656 (9th Cir. 1997).

Dated: September 28, 2018
      Wilmington, DE

**THE ROSNER LAW GROUP LLC**

*/s/ Scott J. Leonhardt*
Frederick B. Rosner (DE #3995)
Scott J. Leonhardt (DE #4885)
824 N Market Street
Suite 810
Wilmington DE 19801
(302) 777-1111
Email: rosner@teamrosner.com
      leonhardt@teamrosner.com

/and/

**PERKINS COIE LLP**
Jordan A. Kroop (admitted *Pro Hac Vice*)
2901 N Central Ave | Suite 2000
Phoenix AZ 85012
(602) 351-8000
Email: jkroop@perkinscoie.com

*Co-Counsel to Debtor-in-Possession*